This case is set for 15 minutes per side, and so if you want to make a rebuttal argument, please try to stop before all your time is used up. I probably shouldn't say this, but if you get into trouble on your time, I'll end up giving you an extra minute or two. I'll do my best. So, Your Honor, may it please the Court, I am Boyer Dirk, I'm here on behalf of the nonpartisan Butterfly, and I'd like to reserve the floor and ask for your aye vote. There are two issues before the Court here today in this argument, and the first one I want to dive right into is what does that corruptly persuades mean under 1512b? A person has a right not to voluntarily cooperate with law enforcement. Engaging in non-coercive persuasion of a witness to not voluntarily cooperate with law enforcement does not constitute corrupt persuasion under the statute. In the Supreme Court's decision in Arthur Anderson, analyzing the same statute, the Supreme Court tells us that corruptly, in the context of the statute, means wrongful, immoral, depraved, evil. And the way we see this illustrated in the case law, both this Court's case, Doss, as well as the Third Circuit's case, Farrell, what we're looking for in regard to that corrupt persuasion is, is somebody asking someone to engage in a course of conduct that is privileged or otherwise lawful? And what we can see in Doss is we actually have two examples, because he's charged with two separate counts. The first one is in regard to his wife. These correspondents saying that he does not want her to testify. The Court says that because there is a marital, spousal privilege against testimony, that that can't constitute corrupt persuasion. And, but if you look at those letters, you know, we have at least excerpts provided by the Court. You have the situation where in the first one there's no reference to marital privilege. The second one at least mentions that husband and wife. But it, is this a very clear that that's what he is going for in regard to these persuasive letters asking her not to testify? Counsel, let me ask you this. Why is it that you're, that Mr. Butterfly used Eric's phone code to call? And so what I think that would go to is part of the other part of the analysis in regard to whether it's corrupt persuasion, which is, I think that demonstrates the consciousness of wrongdoing. But it still doesn't answer the question about whether what he was asking to happen was actually wrongful or depraved or corrupt under the statute. So I don't think that it's the situation where, I think that that gets that knowingly or that consciousness of wrongdoing, but it doesn't make the underlying conduct actually something that's unlawful. Does it make it wrong? Was his conduct wrong? Was his conduct wrong? I don't think, it wasn't corrupt at least as defined under the statute. I'm just, I'm asking whether, are you defending it as not being wrongful? I think that, I think the answer to that is yes. Because ultimately, if, especially my interpretation of the, of the conversation is he's asking her not to voluntarily cooperate. He's not asking her to lie, like in, in Doss with, in regard to CF. In, in one of the other cases that that's citing to, which is Baldrige out of the Ninth Circuit, they're asking the person to lie. There's nothing indicating in that, in that communication that he's asking Mr. Crowshue to have Ms. Allen lie. He's asking her not to voluntarily cooperate. Now, and no one, and law enforcement doesn't have the right to have somebody voluntarily cooperate. They do have a process for making somebody cooperate, whether that's subpoena or otherwise. But I don't think that him asking her not to cooperate is the same as asking her, him to have her engage in an unlawful course of action. It is a law, it is a crime for you to lie to law enforcement or to lie within a proceeding. It is, it is something where it's, it's potentially a crime if you are disregarding a lawful subpoena, whether that's for documents, whether that's for testimony. And I, but I don't think there's any indication in the record of what he's asking for here is for her to engage in an unlawful course of action. Counsel, so I just want to confirm, Allen was never subpoenaed to testify? Not that I can tell under the record. But if she were, and he asked her to voluntarily not listen to the subpoena, is that, are we in a different situation? Yes, I think we are. Because at that point, he is asking her to refrain from a course of action that she is required to do. So you cannot disregard a subpoena. And same thing with, in regard to you can't lie, whether that's in the context of law enforcement or when you're actually in front of the court during proceedings under oath. And I think that also kind of gets back to why sticking to like a specific privilege isn't, isn't a useful framework. Because if you look at like what happens in Farrell in that Third Circuit case, the comment from the person to his co-conspirator is, I'll crucify you if you talk to the, talk to law enforcement. And what the court interprets that as as well, under the findings of fact by the trial court is, he's saying that if you talk to the government about my wrongful conduct, then I'm going to talk to the government about your wrongful conduct. And then is that really asking the person to engage in a Fifth Amendment privilege against self-incrimination? I think that, I think it's an, at that point we're putting form over substance in regard to, as opposed to asking what is the underlying questions. Is what I'm asking the other person to do lawful? So does it matter to you that this is, that he's trying to persuade a victim of intimate partner violence that she should not be cooperating? Does that factor into the way that we should look at this situation? I don't think so, because what if this, just from a hypothetical standpoint, what if this was marital? And it's like, okay, if I'm asking the person to invoke their marital privilege against me, but also the underlying concern was domestic violence, then how is that any different in regard to the, I guess, we would colloquially say something that we don't like, or that we might disprove of. And of course, in that situation, there might be other evidence in regard to, is this actually threatening, or is this extortionate? Is there some sort of implication of, if you don't follow this course of action, I'm going to essentially retaliate against you. And, I mean, if you look at the transcript, admittedly, it is a, there's a lot of swearing, there's a lot of idioms of, you know what I mean, you know what I'm saying, that sort of thing. But I think when we look at the end, especially as what Crochu's interpretation, both within that conversation, that trial, is he's asking, is that Butterfly is asking to see if Alan will not test, will not cooperate, will not appear. And that's Crochu's interpretation, and so that, both in that conversation, because at the end of it, what Crochu says is, hey, Stacey goes over there, maybe I can have her talk to her. And he's like, that'd be great. So, that's what I think the court should conclude, is that if there's not, if you're not asking the person to engage in an unlawful course of action, whether that's refraining from action, or taking action, then it should not be corrupt persuasion under the statute. Because then we're not reaching that wrongful, immoral, depraved, evil standard set forth by the Supreme Court and Arthur A. Anderson. I do want to move to the second argument, which is attempted suffocation. And so, what the statute says is that it is suffocation or attempted suffocation if the person covers the mouth or nose, impeding the person's normal breathing. And in this situation, what the record and testimony shows is that he had his hand over Ms. Allen's mouth for three to five minutes, but that she can continue to breathe normally, through her nose at least. And I think the way that we need to interpret impeding within the statutory language here is blocking. Because if you're not preventing a person from breathing, then it's not suffocation. And so, if you... What do we do then with the or in the statute? Because it's or, nose or mouth. And presumably, if I only cover one, I'm always going to be able to breathe through the other. Well, and I can think, and I've practiced this because I don't want to cover my mouth and give the example, because it makes it hard for me to argue. Of course. You could push your hand into somebody's mouth in a way that isn't maybe completely blocking the nose, but is also obstructing their ability to breathe. And I think the other thing to look at is the second part of the definition, which is we don't need an intent to kill, we don't need visible injury, and we don't need to protractedly, have an intent to protractedly injure the victim. And I think what that's going to is we don't want to have a situation where the person's defense is, well, I suffocated them for a minute or something like that, but I wasn't going to complete it. So, that's a situation where you have actually obstructed the person's breathing. But... Well, I mean, her breathing was impacted, though, right? Because didn't she say she slowed down her breathing so she wouldn't panic? She did say that. And I don't think that, and if you're interpreting impeding as impacting, then you're probably right in regard to, but I don't think that's the reasonable interpretation of the statute when the ultimate thing is suffocating. You don't suffocate somebody, or you're not trying or attempting to suffocate somebody by covering their mouth, but they're still being able to breathe. Ultimately... How are you defining impeding, then? Blocking. Totally blocking. Blocking their ability to... Yeah. Okay. Blocking their ability to breathe. Because otherwise, and I actually think the best evidence in the record of this is that it's going on for three to five minutes. If you're suffocating somebody where you're blocking their ability to breathe, they're not sitting there calmly for three to five minutes, because instinctually, we know we need to breathe. We're going to be thrashing. We're going to be trying to get away. And so, are we turning something where a person... We don't have a reason for why he's covering the mouth, but let's say he was trying to prevent her from screaming. But is that now suffocating somebody because you have your hand over their mouth, but they're still able to breathe through their nose? I think that we need to interpret that term impeding to mean blocking in this situation, because otherwise, we're turning things that aren't suffocation into the crime. And I do use the analogy in my brief in regard to strangulation, which we see more often. But it's the same if you're punching somebody in the throat or shoving them. You're not strangling them. It's an assault, of course, but you haven't strangled them or in that situation. And it's kind of... And again, there's very little case law in this, but the one I could find was that Kibler case. And we have a situation where the person is impacting their ability to breathe, but he thinks he's doing it by putting his weight on her chest. And then there's the question of, is the pillow going over her face? And he's punching her through the pillow to not leave bruises. Again, not good conduct, but is he suffocating her? Is he attempting to suffocate her through the statue? This is almost the reverse, which is, he's got the hand over the mouth, okay, but is he blocking her ability to breathe? And I think the answer is no, based on the evidence in this case, because it's not suffocation at the end of the day. I mean, that word we would hope still means something. So... And it's not suffocation because presumably she could still breathe through her nose? Correct. You're not ultimately blocking her ability to breathe. Okay. So I'm just going to... And I know it's kind of a weird scenario here, but what if she had, I don't know, a sinus infection, a cold, nasal congestion? So she was mouth-breathing and then he covered it. That is an interesting question, is that if you have a situation where there's something that prevents somebody from using one of the other, the nose or the mouth, I think that would then go to potentially the intent or otherwise in regard to the act. But yes, I think the answer is that if there's something that's preventing her from being able to breathe through her nose independent of her mouth, then yes, I think that is suffocation. So I'm into my rebuttal time, unless the Court has any other questions. Otherwise, I will turn it over to my friend here. Okay, I have one question. Does the statute make it unlawful to impede somebody from testifying? Make these... So with the intent to influence, delay, or prevent testimony. So if it's... So the answer is yes, depending on the circumstances. How are they... Okay, then the circumstance I wanted to ask about is whether if someone is trying to coerce a witness and to not testify, whether that kind of coercion... So again, I think the answer depends on the circumstances because Farrell is a thing where he is trying to coerce the other person not to cooperate or testify by saying, if you testify against me, I'm going to testify against you. So if the coercion is threatening, if the coercion is... It also has in regard to the statute of misleading conduct. My hypothetical there would be presenting somebody with a falsified document to try and get them to change their testimony. Like, well, my recollection of it was this. Well, here, look at this fake email. I think your testimony is wrong, so you should change it. I think that's the kind of misleading conduct. So I do think there are circumstances where coercing somebody is, but it's going to depend on what that coercion entails. Okay, thank you. Thank you. Counsel, we'll add two minutes to your time for rebuttal. Good morning, Your Honors, and may it please the Court. My name is Michael Ellis, and I'm an assistant United States attorney based in Spokane, Washington. I was also trial counsel for the United States below. The defendant's convictions should be affirmed. First, to start with corrupt persuasion. This conduct is wrong, as that term is defined by Arthur Anderson, and that comes from another Supreme Court case, Washington v. Davis, where the Supreme Court said in the context of forfeiture by wrongdoing, but nonetheless a general rule that while defendants have no duty to assist the state, the government, in proving their guilt, they do have a duty to refrain from acting in ways that destroy the integrity of the criminal trial system. So if a defendant has a duty to refrain from acting in ways that harm, that subvert, that destroy the integrity of that system, it therefore must be wrong for them to do that, wrong for them, for a defendant, to violate that duty and take actions that do risk destroying the integrity of the criminal trial system. And that rule, adopting that rule into corruptly persuades for 1512b, is also consistent with Doss, with Farrell, with Arthur Anderson's discussion of things that are not within that scope. Because what those cases say, they're all about, really, the examples they discuss are privilege. So in Doss, it's spousal privilege. Farrell, it's attorney-client privilege. And the examples in Arthur Anderson are those two again, along with attorney-client privilege, citing the Updike case. And obviously, privilege is part of the criminal trial system. So that fits with this model because asking a witness to invoke a privilege they would have can't destroy the integrity of the criminal trial system because privilege is part of that system. However, where you're in a situation, as here, as with Ms. Allen, where she had no privilege, she had no right or privilege to withhold her testimony from the trial system, from the public, from, as Farrell says, her civic duty. Did you subpoena her? So it wasn't elicited in the record. Ms. Allen, as with all witnesses, was under subpoena. I don't think the absence or presence of a subpoena is the be-all, end-all here. And that really goes back to the structure of 1512B. So 1512B, 1 and 2A, which were the provisions under which Mr. Butterfly was charged, criminalized using, in this case, corrupt persuasion to influence, delay, or prevent the testimony or convince, cause a person to withhold their testimony in an official proceeding. 2D specifically covers corruptly persuading someone to fail to comply with process, so a subpoena. So if a subpoena was required to violate any of these provisions, when a subpoena is really the particular target of 1512B2D, it would render parts of B1 and B2A superfluous if a subpoena was required as well. So I don't think the presence or absence of a subpoena is particularly important here because that is one particular provision of 1512B2 that Mr. Butterfly was not charged with. He was charged with other ones. And again, asking a witness, and this is where there were some questions earlier about the domestic violence nature of this trial as well. As this Court has noted in Blackshire, as the Supreme Court noted in Davis, domestic violence cases are replete with issues of coercion and tampering, all with the effect, as was the goal here, of not having a trial decided on the facts, not having a trial decided on the law, but having a trial decided on the key witness not coming to testify against the defendant. That was the goal. It didn't work, but it didn't work largely because Mr. Crowshue decided not to follow through with his earlier agreement on the phone with Mr. Butterfly to relay that message and to try and get Ms. Allen to not cooperate. But again, that goes to the overall context here of why this is such a problem, is that as this Court has noted, domestic violence situations are frequent flyers with tampering issues and issues that are trying to subvert the trial process from what it's really about, which is what happened. So relying on that quote from Davis, this kind of conduct is wrong, as that term is defined by Arthur Anderson. It is wrong to ask a witness, to attempt to persuade a witness who has no privilege or right to decline to testify, to not testify. In terms of some of the other issues, so again, the privilege issue covers, that is encompassed within the integrity of the criminal trial system, so these other examples do not, they fit within this metric because if you ask a witness to exercise a privilege, they can exercise. That's part of the criminal trial system. Privilege is privilege. Certain witnesses have privilege. Many witnesses do not. If you do not, then you're required to testify, like the Farrell Court noted in the footnote, where they, while not saying they would reach a different result, did carve out essentially this exact scenario as a situation they were explicitly not covering by their decision, noting that witnesses without privilege have a civic duty to testify. So let me ask about that, though. I know you, and I understand your argument of why a subpoena is not important, but if she wasn't subpoenaed and she decided, I don't want to show up, what would you do? I would probably have committed some kind of trial malpractice if I didn't subpoena the critical witness to the case. I think that if she then didn't show up and no one had actually asked her to show up, because that's what the subpoena does. That's the formal request from the court and the government for her to appear at this hearing. In that case, no one would have actually asked her to turn up. I don't think it would have actually changed the result here, though, given that Mr. Butterfly was charged with attempted witness tampering and not the completed crime. So his crime was completed when he placed that phone call because that was the attempt to commit the crime of witness tampering. It wasn't dependent on whether or not that message was relayed to Ms. Allen or whether Ms. Allen ultimately turned up at trial. His crime was committed when he placed that phone call to Mr. Crowshue. So in this case, it doesn't really matter because Mr. Butterfly wasn't charged with the completed crime of actually having tampered with Ms. Allen. It was the attempt that he was charged with, and that's what he was convicted of doing. So is it irrelevant if she didn't have to testify? Let's say it was a—I know this situation is unique, but it's a car accident case and you need somebody to come testify because you had eight witnesses, and so you're asking all eight of them to show up. One of them decides not to show up because the person who caused the accident called him and said, you know, it'd be nice of you not to show up. And so that person then did not show up. So in that case, the person asking may well have committed the same offenses as Mr. Butterfly except the completed crime because perhaps in that scenario it could be argued that the tampering was complete because the message was received. The witness then did not come and therefore was persuaded to prevent her testimony to cause that person to withhold their testimony, the same provisions that Mr. Butterfly was charged with attempting to do. Because, again, the subpoena is covered. Causing a person to be absent from an official proceeding to which the person has been summoned by legal process is a separate provision, and so for all these provisions to have independent meaning, the subpoena has to be kind of cabined into subsection D, while the others to retain meaning have to comply more broadly to just causing someone to withhold their testimony, which may well be the case in that car accident example. But, again— Does the government ever find itself in the position of trying to encourage witnesses, encourage people not to come to court, not to testify? It seemed to me that the defense was trying to make sort of what's good for the goose is good for the gander argument, and it's brief. So, obviously, the government has higher obligations as administrators of justice under the ethics rules. The government, in the Black case, as an example, comes from a foundation of things the government cannot do. The government cannot take certain actions that impair defense counsel's ability to prepare the case. The government prosecutor cannot go to a witness and tell them, you should not, you cannot talk to the defense, can't do that. Because, again, it goes to this idea of fairness that the government has a higher obligation to follow through on. So, I mean, that would potentially be the government engaging in unethical witness tampering if the government took efforts to, say, preclude or attempt to preclude defense witnesses from appearing at trial. But, again, with the focus here, and, again, with that domestic violence context, this is a—as this court and the Supreme Court have noted, a very particular problem with these type of cases. That, in part, these statutes—and as we'll get to in a moment, the suffocation strangulation statutes were designed to address. That statute, in particular, is one entirely designed to deal with a problem localized to intimate partner domestic violence relationships, as it's limited to folks in those relationships by the relationship element that's required to violate the statute. So, with that, are there any other questions on corruptly persuade or witness tampering? So, the main thing I would note, moving on to suffocation, attempted suffocation, is there was a lot of conversation about what does suffocation mean? What does suffocation—suffocation means what Congress tells us it means. Congress provided a definition of suffocation, just like Congress provided a definition of strangulation. So what we all may sit and think, based on our knowledge of popular culture, of television, of movies, of books, isn't particularly important when Congress gave us a very detailed, in a lot of ways, definition of what suffocation constitutes under federal law, under Section 113. And what it means is someone has to impede the normal breathing, not the breathing, not cease all breathing, impede the normal breathing of another person by covering their mouth, covering their nose, or both. And I think the problem with this idea of, well, the only way to commit suffocation is to cease all breathing, is to block all breathing, is it does result in some of these words and phrases being essentially either rendered meaningless or superfluous in the statute. Normal breathing simply can mean atypical breathing. Ceasing a person's breathing entirely, that would constitute impeding their normal breathing, but that's not the only thing that could constitute impeding that person's normal breathing. Impeding normal breathing can simply mean interfering with normal breathing. That's a relatively common sense way of understanding that phrase to give meaning to the word normal. And here, as Your Honor mentioned, Ms. Allen referenced that she did change her breathing. She could not breathe through her mouth. That is not normal breathing if you're unable to breathe through your mouth. She had to adjust the tempo of her breathing to account for her mouth being covered and her inability to breathe through her mouth. So again, normal breathing was impeded, interfered with. And then the idea of the or, where mouth, nose, or both, there are likely scenarios of people who maybe could have their mouth covered and they're unable to breathe through their nose for some other reason, but that would be a very strange way of reading the statute to account for that the statute's only really covering certain very uniquely medically oriented persons. I think it's a much more natural reading to say, well, Congress wrote this definition to be broad, to deal with a problem, which is the prevalence of strangulation and suffocation and incidents within intimate partner violence-impacted relationships. And so this definition was written broadly to account for the dangerousness of these situations. Just having, working on domestic violence cases in Indian country, in eastern Washington, the statistics are replete how dangerous strangulation and suffocation incidents are, how they can be precursors of far worse violent acts, and it's not remotely illogical for Congress to have written a very broad definition to account for the severe harms that can flow from this type of conduct. So again, looking at the facts here, looking at what Ms. Allen testified to, and looking at the definition that Congress gave us, not what we may think of as what suffocation looks like, but what Congress gave us, that definition was satisfied here, and the jury properly convicted Mr. Butterfly of that offense. So unless the court has any further questions for me on either issue, all right, thank you all. Thank you, Your Honors. Before I get into rebuttal, do you guys have any questions to start with? So now that we know that Ms. Allen was subpoenaed, does that change your argument at all? It would change my argument if she was subject to subpoena at the time the attempted communication occurred. So that was early in the case. Again, I trust my friend on the other side. When he says she was subpoenaed, it would make sense. Was she under subpoena at the time would still be the question. Okay. In regard to rebuttal on this, on the suffocation, I agree that we have to follow what Congress says in regard to the definition, but that assumes the question that I'm arguing. What does impeded mean in the context of the statute? And if you are interpreting impeded in a broad way of saying that any minor obstruction otherwise, then I would agree, but I don't think that's the only way to read the word, and in this case the relevant word in the statute is impeding. And I think that could Congress have written a definition of suffocation that is completely divorced from any colloquial understanding of what suffocation means? Yes, they could have. I just don't think they did. I think when they're putting impeding in there, they are saying that we are blocking somebody's ability to breathe. And then in addition to what the rest of the statute says as far as the definition, it is providing some information in regard to why we are wanting to take these situations seriously, saying that we don't need to demonstrate an intent to kill. We don't need to demonstrate an intent to seriously injure a person. We don't need to have any visible injury. But I don't think that interpreting the statute of impeding to mean blocking in the situation does anything to make a redundant part of the statutory language. And so I think that in that context, my reading of the statute and that interpretation of it is still consistent with the statutory language in addition to being something that lines up, I think, better with what we would understand suffocation to be. We're not asking you to go outside of the statutory language in that situation. Unless the Court has any other questions. All good. Thank you. Thank you. Thank you, counsel. I want to thank counsel on both sides of this interesting case for their excellent arguments. And I want to also thank counsel for traveling across the mountains to make it here. And with that, the case is now submitted.
judges: GOULD, ALBA, Orrick